Nelson H. SALMON and Fern Salmon,
Plaintiffs and Appellees,

v.

Ruane PETERSON, Defendant
and Appellant.

No. 13242.

Supreme Court of South Dakota.

Argued April 24, 1981.

Decided Oct. 21, 1981.

Wayne F. Gilbert of Gunderson, Farrar, Aldrich, Warder & DeMersseman, Rapid City, for plaintiffs and appellees.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

WOLLMAN, Chief Justice.

Appellant appeals from a judgment awarding appellees damages and requiring appellant to reconstruct a retaining wall between the parties' property. We affirm.

Appellees (plaintiffs below) are the owners of a residential lot located in Rapid City. It immediately adjoins the western boundary of the lot owned by appellant. Appellees bought this unimproved lot in 1972 and completed construction of a home thereon in 1974.

Appellant moved into the house on her lot in the spring of 1973. A retaining wall located entirely on appellant's land separates the two lots. This wall was built sometime in late 1949 or early 1950, during the same period that the house was built. The purpose of the wall was to support the higher elevation of appellees' lot after the original owner of appellant's lot excavated the land to build the house.

On June 14, 1976, following a heavy rain, the retaining wall bulged and pushed out, causing the adjacent earth on appellees' property to cave in along the wall for a distance of seventy-five to eighty feet, creating a ditch approximately five feet deep and leaving a gap six feet wide between the wall and the remaining portion of appellees' lawn. Both parties agree that the failure of the wall was caused by a buildup of hydrostatic pressure behind it.

The first issue is whether appellant had the responsibility to maintain the retaining wall built by her predecessor so as to provide continuing lateral support to appellees' land. The question whether appellees are entitled to lateral support from appellant's lot is governed by SDCL 43–16–2:

> Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations of the same for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations.

This statute states the common law right to lateral support which a coterminous owner receives from adjoining land. *Grady v. Felker*, 85 S.D. 477, 186 N.W.2d 509 (1971).

The right of lateral support has been qualified by the addition of the requirement that the land must not be burdened by artificial pressure:

> There is, as incident to land, in its natural condition, a right to support from the adjoining land, and if land not subject to artificial pressure sinks or falls away, in consequence of the removal of such support, the owner may have an action for damages against the party thus removing such support (citations omitted). This right of action does not depend upon negligence and unskillfulness, but upon the violation of the right of property which has been thus invaded and disturbed (citations omitted). As its right of lateral

support is incident only to the land itself, in its natural condition, and without the superadded weight of improvements, the damages recovered in an action for the simple withdrawal of such support are limited to the injury to the land itself (citations omitted).

*Ulrick v. Dakota Loan & Trust Co.*, 2 S.D. 285, 291, 49 N.W. 1054, 1055 (1891).

 Given the existence of the duty to laterally support adjoining lands, the question then becomes whether appellant, as subsequent owner of the lot and retaining wall, had a duty to maintain the wall so as to provide continuing support to the adjoining land. In *Gorton v. Schofield*, 311 Mass. 352, 41 N.E.2d 12 (1942), a granite retaining wall had fallen into disrepair and was thus too weak to support the adjoining land. Although the defendant was a successor in title to the one who had originally constructed the wall, the Supreme Judicial Court of Massachusetts affirmed an equitable decree requiring the defendant to provide adequate support to the plaintiff's land by strengthening the retaining wall and restoring it to a condition that would prevent damage to the plaintiff's land. The Massachusetts court concurred in the reasoning in *Foster v. Brown*, 48 Ont.Law Rep. 1, and stated: "[We] are of opinion [sic] that the burden of providing lateral support to the plaintiff's land in its natural condition is one of continued support running against the servient land." 41 N.E.2d at 15. Quoting from *Foster v. Brown*, supra, the Massachusetts court said:

> [T]he consequences of 'holding otherwise would be that where a land-owner had made an excavation in his land, and thereby removed the lateral support to which his neighbor is entitled, but had built a solid retaining wall to prevent subsidence, which, during his ownership, prevented it, and had then sold his land to another and that other to others, and, owing to a subsequent owner—it might well be fifty years after—permitting the retaining wall to decay and no longer to answer the purpose for which it was constructed, with the result that his neigh-

bor's land has subsided, he would be liable to answer in damages for the injury, and the man whose failure to keep up the retaining wall was the effective cause of the injury would go scot free, and that too where the subsidence would not have occurred if the retaining wall had been kept in repair.'

41 N.E.2d at 15. We agree with the reasoning of the Massachusetts court and hold that appellant as the present owner of the land and the retaining wall had the continuing duty to maintain the wall so that it would provide continuing lateral support to appellees' land.

█ The next issue is whether the trial court correctly found that the failure of the wall was the proximate result of the improper construction of the wall and not the result of appellees' use of the lot by building a house and maintaining a lawn and garden thereon. The trial court found that the retaining wall was not properly constructed so as to withstand hydrostatic pressure inasmuch as it lacked the necessary and appropriate drainage devices that would have relieved the gradual buildup of hydrostatic pressure against it. The trial court also found that the footings and reinforcements of the wall were inadequate and contributed to the breakdown of the wall. Both parties' experts agreed that when originally constructed, the wall adequately supported the unimproved lot now owned by appellees. Both experts also testified, however, that the wall was not constructed according to accepted engineering standards and that the buildup of hydrostatic pressure weakened it with the passage of time. After a review of the record we cannot say that the trial court erred in finding that the wall failed because of natural causes exacerbated by faulty construction and not because of appellees' use of their lot. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

█ The final issue is whether the trial court properly ordered appellant to restore lateral support to appellees' lot. In *Gorton v. Schofield*, supra, the Massachusetts court

affirmed an order compelling the defendant to rebuild or repair the retaining wall on his land. In affirming the order the court said: "The only effective remedy that can be afforded the plaintiff and which will put an end to litigation is to require the defendant to conform to the terms of the final decree entered by the judge (citations omitted)." 41 N.E.2d at 15–16. The same principle applies here. The wall belonging to appellant failed through no fault of appellees, and appellant should therefore be required to rebuild it to restore appellees' lot to its natural condition.

The judgment is affirmed.

MORGAN and FOSHEIM, JJ., concur.

DUNN and HENDERSON, JJ., dissent.

DUNN, Justice (dissenting).

I would dissent.

The majority opinion relies on the Massachusetts Supreme Court decision of *Gorton v. Schofield*, 311 Mass. 352, 41 N.E.2d 12 (1942) to place on the present owner of the land the continuing duty to maintain the wall so that it would provide continuing lateral support to appellee's land. However, in *Gorton* the court specifically found that the landowner had permitted "the retaining wall to decay and no longer to answer the purpose for which it was constructed[.]" 311 Mass. at 358, 41 N.E.2d at 15. The subsequent landowner was found to be the effective cause of the injury.

This court is confronted with a different situation. The trial court found in Finding of Fact XIII that "[t]he retaining wall in question was not properly constructed so as to withstand hydrostatic pressure, and specifically lacked necessary and appropriate drainage devices such as 'weep holes' or a 'French drain system' in order to relieve hydrostatic pressure against it, lacked adequate footings and reinforcements, and had other engineering defects." Furthermore, the trial court found that "[t]he failure of the retaining wall in question was the proximate result of the improper construction of the wall, the age of the wall, and hydrostatic pressure caused by natural forces and

causes." Finding of Fact XV. The trial court did not find the defendant personally negligent with regard to the care and upkeep of the wall. Conclusion of Law 2.

A landowner who excavates near the adjacent property owes a duty to prevent injury to those adjacent lands from the removal of lateral support or may be subject to an action for damages. *Ulrick v. Dakota Loan & Trust Co.*, 2 S.D. 285, 49 N.W. 1054 (1891); 2 C.J.S. *Adjoining Landowners* § 15 (1972). This obligation, however, is only upon the owner who caused the excavation and is not on a subsequent owner. *McKamy v. Bonanza Sirloin Pit, Inc.*, 195 Neb. 325, 237 N.W.2d 865 (1976); *Paul v. Bailey*, 109 Ga.App. 712, 137 S.E.2d 337 (1964).

In *First National Bank & Trust Co. of Rockford v. Universal Mortgage & Realty Trust*, 38 Ill.App.3d 345, 347, 347 N.E.2d 198, 200 (1976) the Illinois Appellate Court quoting from Restatement of Torts, Ch. 39, § 817(j) stated:

> A possessor of land becomes subject to the liability stated in this Subsection when he withdraws from another's land the natural support furnished by his land, but he does not become liable under the rule stated in this Subsection unless the other's land subsides. Transfer of his land to a third person does not relieve him of risk of liability or *subject the subsequent possessor to this liability.* (emphasis in original) *The actor may avoid liability by furnishing artificial support,* such as a retaining wall, *sufficient to replace the natural lateral support withdrawn.* (emphasis added)

The court found the subsequent owner not liable for damages, finding that defendant had not altered or affected the conditions as they were when it took title to the property. No action on its part was the legal cause of the harm.

Even though the facts in *First National* indicated that a retaining wall had not been built after the excavation, the court's rationale is applicable to our fact situation. Appellant did not alter or affect the conditions of the property as they were when she took title to the property. She was not negligent in the upkeep of the wall and did not allow the wall to decay to the point where it no longer could serve the purposes for which it was constructed. Rather, the trial court found the legal cause of the harm to be the improper construction of the wall. The original landowner did not fulfill his duty of furnishing artificial support sufficient to replace the natural lateral support withdrawn. This risk of liability is not transferrable and thus appellant in this action is not liable to replace the wall or for damages resulting from the shifting of the wall.

I am authorized to state that HENDERSON, Justice, joins in this dissent.